FILED

2017 Aug-09  PM 05:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NICOLE HARRIS, an individual; | ) | |
| TAYLOR HARRIS, an individual; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: |
| | ) | |
| BILL SMITH BUICK-GMC, Inc., an | ) | |
| Alabama corporation; | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## <u>INTRODUCTION</u>

This action arises out of the pattern and practice by the Defendant to engage in the fraudulent and deceptive business practice of selling undisclosed wrecked and damaged automobiles as new vehicles. In carrying out this scheme, the Defendant has utilized its status as a designated title agent for the State of Alabama to defraud consumers and the State of Alabama. Defendant has preyed on innocent, unwary consumers in Jefferson County and surrounding north Alabama counties, and makes huge profits from its illegal practices. Plaintiffs request this court put an end to these deceptive and illegal practices.

## JURISDICTION

1. This is an action instituted for damages and equitable relief in relation to a $65,831.02 motor vehicle purchased by the Plaintiffs.

2. Jurisdiction is proper under 28 U.S.C.A. §1331 and given to district courts for "all civil actions arising under the Constitution, laws, or treaties of the United States."   Such federal question jurisdiction may arise from the initial pleading or from subsequent motions, pleadings or other papers where the federal question is first able to be ascertained.  42 U.S.C.A. 1446(b).

3.   Federal question jurisdiction arises from the initial pleading and Plaintiffs' assertions for violations of the Magnuson-Moss Trade Warranty Act, 15 U.S.C. §3201 *et seq*.

4.   This Court has supplemental jurisdiction over the related Alabama State law claims asserted in this action pursuant to 28 U.S.C. §1367.

5.   Venue in this District is proper pursuant to 28 U.S.C. §1391 (b) and (c) because Defendant conducts business and/or maintains its principal place of business in the Northern District of Alabama, and the wrongful conduct out of which Plaintiffs' claims arise occurred within the Northern District of Alabama.  Defendant is found, does business in, and transacts business, within this District.

## PARTIES

### Plaintiffs

6.  Plaintiff Nicole Harris is an adult resident citizen of Alabama.

7.  Plaintiff Taylor Harris is an adult resident citizen of Alabama.

### Defendant

8.  Defendant Bill Smith Buick-GMC Inc. is an Alabama corporation which does business under the name "Bill Smith Buick-GMC" (hereinafter referred to as "the Dealership").  The Defendant is in the business of selling new and used cars, and owns and operates its dealership located in the State of Alabama, and within the Northern District of Alabama.

9.  In doing the acts and omissions alleged in this Complaint, the Defendant conspired with and among other individuals and entities whose names are currently unknown to engage in the conduct made the subject of this Complaint and acted as agents of one another, pursuant to a common goal or scheme to carry out the wrongful conduct and to conceal that conduct.

10.  As the principal of its employees and agents, the Dealership is liable to the Plaintiffs for any and all damages suffered by the Plaintiffs as a result of the unlawful acts of the Dealership's employees.

## ALTERNATE PLEADINGS

11.  Plaintiffs allege that the occurrences made the subject of this complaint require that Plaintiffs plead one or more of the following counts, or, in some cases, one or more of the individual claims thereof, in the alternative, where inconsistency arises in their application.

## RESPONDEAT SUPERIOR LIABILITY

12.  As the principal of its employees and agents, Defendant is liable to Plaintiffs for any and all damages suffered by Plaintiffs as a result of the unlawful acts of Defendant's employees and agents.

## FACTUAL ALLEGATIONS

13.  On or about, September 2, 2016, Plaintiffs visited the Defendant, Bill Smith-Buick-GMC, Inc. to inquire as to the purchase of a new vehicle for their growing family.

14.  Upon entering the dealership, Plaintiffs were met with a salesperson who identified himself as Dylan.  Mr. & Mrs. Harris explained their specific needs for a vehicle, as well as the required specifications of the vehicle for their growing family. Dylan told them that he knew exactly what they wanted, and that he had a great truck for the Harris family that was new, with very low miles.

15. Defendant showed and demonstrated to Plaintiffs what was described by Defendant's salesman Dylan as a new 2016 GMC2500 HD Sierra Denali, VINXXXXXXXXXXX225609 (the "Vehicle"). Defendant made these representations orally, in writing on the sales documents, and on the official title documents recorded with the State of Alabama Department of Revenue Motor Vehicle Division.

16.   Dylan represented to Mr. & Mrs. Harris that the new truck would have the full manufacturer's warranty, but its price would be discounted because of the additional miles.  He explained that the reason the vehicle had over 680 miles was because the owner of the dealership had used it for limited, personal, use.  He further informed the Harrises that the "owner" of the dealership had been the only driver, and therefore it was still considered a "new" vehicle.

17.  Through information and belief, in Defendant's routine course of business it was common practice for its owners and employees to operate new vehicles on the highways of Alabama on a limited basis utilizing a "dealer tag" without applying for an Official Alabama Certificate of Title.  This practice allows them to avoid documenting a title transfer on the original certificate of origin supplied by the manufacturer.  All aspects of Federal and State law regarding disclosures, mileage recording, and the disclosure of damage on new vehicles are still applicable.

18.  This use of the vehicle by the dealer can cause an otherwise new vehicle to accumulate considerable mileage.  However, despite their "personal" use of the vehicle during this period, dealers often sell these as "new" vehicles.

19.  However, if during this use of the vehicle by the dealership, or through other events prior to sale, the vehicle is wrecked or suffers substantial damage, such damage would no longer allow the vehicle to be considered a "new" vehicle and any such damages must be fully, accurately, and completely disclosed, and not suppressed, hidden or misrepresented.

20. Federal law requires that every "new" vehicle for sale is required to display a "Monroney Sticker" pursuant to the Automobile Information and Disclosure Act of 1958, codified at 15 U.S.C. §§1231-3. The Monroney Sticker must identify, among other things, the Manufacturer's Suggested Retail Price ("MSRP") and included vehicle options.

21. No Monroney Sticker was displayed on the Vehicle at the time it was demonstrated to Plaintiffs by the Defendant, and Plaintiffs requested to see it.   The dealership agreed to provide the Plaintiffs with a copy of the Monroney Sticker, but it was never shown or provided to Plaintiffs.  Instead, the Defendant's salesman informed the Plaintiffs that the MSRP was just over $69,000, and that the truck was "fully loaded".

22.  Upon test driving the vehicle, Plaintiffs noticed the driver's side mirror was missing a small plastic piece, which exposed the metal frame of the mirror.  Plaintiffs specifically asked Defendant's salesman what had happened to the exterior mirror. The salesman, Dylan, indicated that he was unsure that it must have fallen off, but that he would take care of it. At this time, Plaintiffs specifically asked if the truck had ever been wrecked or damaged.  Dylan assured them that it had not, and that the missing plastic piece would be an "easy fix".

23.  Plaintiffs agreed on a sales price for the Vehicle, and left the dealership to pick up their children from daycare.  Plaintiffs sent a text message to the salesman, Dylan, to inquire if the missing plastic piece could be replaced/repaired that day. After picking up their children, the Plaintiffs returned to the dealership.  Plaintiffs were told that the parts department was closed but Dylan agreed to replace the plastic piece by taking one off an identical new truck while the Plaintiffs were signing the paperwork.

24.  Plaintiffs were led to another office to sign the paperwork.  During the document signing, the Plaintiffs were presented with what was referred to as a damage disclosure form.   No damages or repairs were listed on the form.    Plaintiffs questioned why they would need to sign such a form because they were told that it was a new vehicle that had never been wrecked or damaged.  Plaintiffs were told by the person in the F & I department that because the missing plastic piece had been

removed from another new truck, they would need that form for the dealership to order the replacement part for the truck still on their lot.  At no time were the Plaintiffs informed as to any other damages, the nature or extent of the damages repaired, or that the vehicle had ever been involved in any automobile accident or collision, much less a serious one.  At no time were Plaintiffs informed as to any specific damages or repairs to the vehicle.

25. Based upon the assurances and representations from the dealership, Plaintiffs went forward with the closing of their truck purchase.  According to the documents executed by the Plaintiffs, Defendant Bill Smith Buick-GMC, Inc. sold to the Plaintiffs what was represented as a new 2016 GMC 2500 Sierra Denali HD.    As part of their purchase, Plaintiffs traded in their 2009 Chevrolet Silverado 1500.  The cash price of the new 2016 GMC Sierra vehicle was $65,827.39. Along with the vehicle, the Harrises purchased a GAP Waiver addendum and an extended warranty/service contract on their new vehicle.  The total sales price of the vehicle, including the down payment, was $79,365.21.

26.   According to the extended warranty/service contract made part of the sale, Defendant represented that all major components and systems on the vehicle would be covered.  Included in the language for the extended warranty/service contract was the following language: "Major Guard is a comprehensive vehicle service contract covering over 7,400 components on your vehicle, including really expensive-to-fix

things like high-tech and luxury components. You can rest assured that you're protected from the unexpected and prepared for your vehicle's future."

27. Additionally, the dealership represented that the vehicle had been inspected with a "certified multipoint inspection" and that there was no noted damage on the body condition of the vehicle.

28.  At the time of sale, both Mr. & Mrs. Harris were led to believe that the manufacturer's warranty, along with the extended warranty/service contract would cover the full vehicle and that no preexisting damage(s) would void or exclude any part of the warranty coverages contained in the contract.

29. Additionally, the dealership required the Plaintiffs to purchase full coverage insurance on the vehicle as a condition of financing.  Plaintiffs were not told that there was pre-existing damage to the vehicle, or substandard repairs with substandard parts that would be excluded from normal insurance policies.

30.  Prior to the instigation of this litigation, Plaintiffs provided written notice to the Defendant, Bill Smith Buick-GMC, Inc. of its breach of contract and warranty as well as the non-conforming conditions.

31.  On or about May 18, 2017, Bill Smith, through its attorney, responded to Plaintiffs' written notice, stating that the Finance Manager, Andy Cole, had discussed at length the damage to the truck and that the vehicle had been damaged when Andy wrecked into a mailbox.  During later correspondence, the attorney for

the dealership informed Plaintiffs' counsel that he had been test driving the vehicle at issue when the plastic piece came off from the mirror.

## CAUSES OF ACTION

## COUNT ONE:

## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

32. Plaintiffs re-allege the averments contained in above Paragraphs as if fully set forth herein.

33. The 2016 Sierra Denali HD truck is a consumer product, as defined in § 2301(1) of the Magnuson-Moss Warranty Act.

34. Defendant Bill Smith is both a warrantor and supplier, as those terms are defined in § 2301et seq. of the Magnuson-Moss Warranty Act.

35. Plaintiffs are consumers, as that term is defined in § 2301(3) of the Magnuson-Moss Warranty Act.

36. Prior to sale, and unbeknownst to Plaintiffs, the Plaintiffs' vehicle suffered substantial damages and substandard repairs while in possession of the Defendant; yet, Defendant still sold it as a new vehicle. The vehicle has numerous defects in materials and workmanship, which are unable to be repaired.

37. The implied warranties on the vehicle has been breached as well because the vehicle:

a. does not pass without objection in the trade or industry;

b. is not of uniform quality and quality;

c. is not fit for its ordinary purposes;

d. does not conform to its labels and other warranties;

e. is not adequately packaged and labeled;

38. Plaintiffs have provided notice to Defendant and/or Defendant's agents of these problems and/or defects and breach of warranties and contracts.

39. Plaintiffs have complied with all reasonable terms and provisions imposed upon them by Defendant and/or Defendant's agents.

40. Defendant and/or Defendant's agents' breaches of their written, express, and/or implied warranties constitute a substantial impairment to the value of the vehicle and violate the Magnuson-Moss Warranty Act.

41. As a proximate result, Plaintiffs were caused to suffer loss of monies, incidental and consequential damages, physical injuries, as well as severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs pray that this Court will allow the Plaintiffs to revoke their acceptance of the vehicle and award damages in an amount the Court deems appropriate to compensate Plaintiffs for their loss of monies, incidental and consequential damages, severe mental anguish and emotional distress, in an amount

to be determined by a jury, as well as attorneys' fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

## COUNT TWO:

## FRAUD/MISREPRESENTATION/FRAUDULENT SUPRESSION

42.   Plaintiffs hereby incorporate and adopt each of the above and foregoing allegations as if fully set forth herein.

43.  Defendant Bill Smith Buick-GMC, Inc. knowingly and intentionally placed the Vehicle into the stream of commerce as a "new" vehicle with the intent to deceive the Plaintiffs and all future purchasers as to the true condition of the vehicle.

44.  On or about September 2, 2016 until May 18, 2017, the Defendant knowingly and intentionally represented to Plaintiffs that the Vehicle was a new vehicle that had never been involved in an automobile accident, had not been damaged or repaired, and that the vehicle was a new vehicle.  Through this non-disclosure of the actual condition of the vehicle, Defendant caused the Plaintiffs to pay a higher purchase price, suffer other increased costs, and other incidental and consequential expenses, to their detriment.

45.  In addition to the above representations, on or about September 2, 2016, while at the Defendant's dealership, the Defendant made the following representations of material fact:

a. That the truck Plaintiffs were purchasing was a "new" vehicle;

b. That the truck had only been driven by the "owner" of the company;

c. That it did not know how the plastic piece had fallen off the mirror;

d. That the extended warranty would provide coverage for the identified parts currently existing on the vehicle;

e. That there was no prior damage or repairs that would or could possibly exclude future coverage under the extended warranty/service contract;

f. That the manufacturer's warranty would cover all the parts identified on the truck;

g. That there was no preexisting condition including but not limited to prior damage or repairs performed on the truck that would void all or part of the manufacturer's warranty;

h. That the only repair performed on the truck was the missing plastic piece on the mirror;

i. That full coverage insurance was proper, required and necessary. Additionally, that such insurance would not be voided or limited due to a preexisting condition or exclusion for prior damage or repairs;

j. That the vehicle had never been wrecked or involved in a prior vehicle accident.

46. Said representations were false. The Defendant knew they were false at the

time they were made and either: a) intentionally and willfully made said representations; b) recklessly or negligently made said representations, thereby causing the Plaintiffs to reasonably rely upon them; or, c) innocently or mistakenly made said representations in such a way to cause the Plaintiffs to reasonably rely upon them.  Furthermore, by its conduct in withholding the proper disclosures under state law as outlined above, withholding information concerning the vehicles prior damage and repairs, and withholding information when it was under a duty to speak truthfully and fully, Defendant has willfully, recklessly, innocently misrepresented and/or fraudulently suppressed material information which had that information been available to the Plaintiffs at the time of sale would have resulted in the Plaintiffs not purchasing the vehicle and not being damaged.

47.  Plaintiffs reasonably relied upon said representations by purchasing the vehicle. Plaintiffs also reasonably relied upon these representations by incurring expenses and costs consistent with exercising ownership rights in the vehicle.

48.  As a proximate result of the conduct of the Defendant, Bill Smith, the Plaintiffs were caused to suffer loss of monies, incidental and consequential damages, including but not limited to:

> a)  Increased purchase costs;
>
> b) Increased taxes;
>
> c) Increased finance costs;

d) Increased insurance costs;

e) Increased registration costs;

f) as well as severe mental anguish, emotional distress and anxiety.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will award damages in an amount a jury deems appropriate to compensate the Plaintiffs for their loss of monies, incidental and consequential damages, severe mental anguish and emotional distress, attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT THREE:

## WANTONESS/NEGLIGENCE

49.   Plaintiffs hereby incorporate and adopt each of the above and foregoing allegations and material averments as if fully set forth herein.

50.  Defendant owed the Plaintiffs a duty not to be wanton/negligent in their conduct both before and after the sale of the vehicle, including but not limited to the following ways:

a.      Misrepresenting the condition of the Vehicle;

b.      Concealing and omitting the material fact that the Vehicle was known to Defendants and/or Defendants' agents to have been involved in a serious

accident with existing mechanical, structural and/or other problems and defects;

c.     Selling Plaintiffs a wrecked/severely damaged Vehicle with severe pre-existing mechanical defects of which Defendants and/or Defendants' agents knew or should have known;

d.     Other conduct inconsistent with Defendants' and/or Defendants' agents' obligations and duties under the contract.

51.     Additionally, Defendant, and/or its agents breached its duty of good faith to Plaintiffs implied in the transaction under § 1-304 of the Uniform Commercial Code by the foregoing.

52.   By its conduct the Defendant breached said duties to the Plaintiffs and was wanton and/or negligent.

53.   As a proximate result, the Plaintiffs were caused to suffer loss of monies, incidental and consequential damages, as well as severe mental anguish and emotional distress.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will award damages in an amount a jury deems appropriate to compensate the Plaintiffs for their loss of monies, incidental and consequential damages, severe mental anguish and emotional distress, attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT FOUR:

## <u>NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION</u>

54.   The preceding paragraphs of this Complaint, and any additional factual averments set forth in any subsequent sections of this Complaint, are deemed to be repeated and incorporated by reference in this Count.

55.  Defendant owed Plaintiffs a duty of care and professionalism in the rendition of services, in training and supervising its employees to perform those services in full compliance with the laws of the State of Alabama and the Federal government, in not engaging in or allowing its agents to engage in the wrongful practices herein alleged, in not suppressing or concealing such activities, or enabling its agents to do so, and in terminating or otherwise disciplining those employees known to have violated company policies, state laws or regulations by engaging in the misconduct herein alleged, or employees known to have suppressed material information or to have made material misrepresentations to Plaintiffs.

56.   Defendant owed duties to Plaintiffs in putting forth loyal, honest, and fair dealing employees who act in compliance with State law and contractual and other obligations that arise from the special or confidential relationship between the parties, Alabama statutes and regulations governing the automotive industry, and Defendant's superior knowledge of the automobile industry, the duties of a designated agent for title transfers, its practices, and Defendant calculations and

collection of interest and fees.  Defendant and its employees and agents are among those exclusively licensed by the State to provide title transfer services to vehicle purchasers.  Consumers, and specifically, the Plaintiffs, must rely on licensed professionals such as the agents of Defendant because they are the only group that can provide such services by law and are purportedly acting on behalf of the Alabama Department of Revenue to assist in the proper transfer titles.

57.  Defendant breached its duty by negligently retaining employees known to have violated state and/or Federal laws relating to the mandatory disclosures required at the time of vehicle purchases. These employees are known to have violated Defendant's stated company policies and procedures regarding the sale of automobiles, proper transfer of titles, mandatory disclosures and rules and regulations regarding the disclosure of damage on automobiles within the automotive industry.

58.  Defendant's negligent retention of employees known to have engaged in the misconduct described herein acted as ratification of such misconduct.

59.  Defendant, through its agents, breached the duties owed to the Plaintiffs, and such breaches arose out of the negligent or wanton conduct of the Defendant and those who acted in concert or conspiracy with it or acted as its agents, servants or employees, and in the line and scope of its business, contractual and statutory duties,

to engage in material misrepresentations to Plaintiffs in order to preserve and protect the financial interest of Defendant.

60.  Defendant knew or should have known of the wrongful or fraudulent practices engaged in by its employees, and knew or should have known that its own training, supervision and retention practices were inadequate to fulfill its obligation to protect the public from unscrupulous, dishonest, and deceptive practices by its agents and employees.  Defendant knew, or should have known that its policies and practices in training, supervising and retaining such employees were inadequate to prevent or detect the misconduct described herein, and such inadequate policies and practices thus were the actual and proximate cause of Plaintiffs' injuries.

61.   Plaintiffs have incurred damages proximately caused by Defendant's negligence, in training, supervising and retaining its employees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will award damages in an amount the Court deems appropriate to compensate Plaintiffs, for their loss of monies, incidental and consequential damages, severe mental anguish and emotional distress, in the amount to be determined by a jury as well as attorney's fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

## COUNT FIVE:

## <u>BREACH OF EXPRESS WARRANTIES</u>

62.  Plaintiffs adopt and re-allege all of the material allegations and averments contained in the above and foregoing paragraphs as if fully set forth herein.

63.   Prior to the sale, Defendant offered express warranties on the vehicle including, but not limited to:

> a) that the vehicle was a new vehicle;

> b) that the mileage recorded on the Manufacturer's Certificate of Origin was the correct mileage;

> c) that the vehicle had not been wrecked or damaged;

> d) that said vehicle had never been previously used and damaged in such a way as to no longer consider it a new vehicle;

> e) that the disclosures contained on the sales documents were true and correct.

Defendants also expressly warranted that the vehicle had only been driven 686 miles.

64.  Defendant impliedly warranted that the vehicle was merchantable, and fit for the particular purposes of the Plaintiffs.  Plaintiffs and future purchasers of the automobile were the beneficiaries and intended third party beneficiaries of said express and implied warranties.

65.  By its conduct, the Defendant, Bill Smith, breached its express and implied warranties to the Plaintiffs.

66.  As a proximate result, the Plaintiffs have been caused to suffer loss of monies, incidental and consequential damages, loss of value to the vehicle, severe mental anguish and emotional distress.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs requests that this court will award damages in an amount appropriate to compensate them for their loss of monies, incidental and consequential damages, severe mental anguish and emotional distress in an amount to be determined by a struck jury plus attorney's fees and costs of this proceeding.


## COUNT SIX:

## ALABAMA DECEPTIVE TRADE PRACTICES ACT CLAIMS

67.  Plaintiffs hereby incorporate and adopt each of the above and foregoing allegations and material averments fully set forth herein.

68. Plaintiffs are "consumers" as defined by Ala.Code§8-19-3(2).

69. The automobile made the subject of this transaction are "goods" as defined by Ala.Code § 8- 19-3(3).

70. Defendant's conduct described herein was made with "knowledge" as defined by Ala.Code §8-19-3(4).

71. The Plaintiffs notified the Defendant of their claim pursuant to the Alabama Deceptive Trade Practices Act pursuant to Ala.Code § 8-19-10(3)(e) prior to the service of the summons and complaint.

72. Defendant violated the Act, including, but not limited to, violations of Ala.Code §§ 8-19-5(5), (6), (7), (11), (12), (21), (22), and (27) in that Defendant(s), orally, in writing, and through advertising, represented to Plaintiffs that the vehicles had certain characteristics, qualities, or was of a particular standard, quality and/or grade when said vehicles did not, in fact, conform with such oral, written and advertised representations. Defendants further violated the act by failing to display the Maroney Sticker prominently in the window prior to the Plaintiffs purchasing the vehicle. Failure to comply with the FTC regulations is a per se deceptive act.  Furthermore, such conduct was false, misleading and deceptive, and was intended by Defendant to be relied upon by the Plaintiffs in their purchase decision.

73. Pursuant to Ala.Code § 8-19-10, Plaintiffs claim actual damages, punitive damages in the amount of three times the actual damages, costs of this action, and attorney fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will award damages pursuant to Ala.Code § 8-19-10, in an amount the Court deems appropriate to compensate Plaintiffs, for their loss of monies, incidental and consequential damages, and punitive damages to deter Defendant's misconduct in

the future, for the severe mental anguish and emotional distress of the Plaintiffs, in the amount of three times actual damages, and other costs, fees, and attorney fees incurred pursuing this claim. Plaintiffs pray the Honorable Court also take into consideration, Plaintiffs prolonged and suffered diminution in value and dignity.

## COUNT SEVEN:

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

74.    Plaintiffs hereby incorporate and adopt each of the above and foregoing allegations as if fully set forth herein.

75.    A warranty that the Vehicle was in merchantable condition was implied in the transaction made the subject of this dispute, pursuant to § 2-314 of the Uniform Commercial Code.

76.    Defendants provided a written warranty on the Vehicle and were either warrantors or suppliers under the Magnuson-Moss Warranty Act. As such, Defendant may not disclaim implied warranties as to the Vehicle.

77.    Defendants sold Plaintiffs a Vehicle that was not fit for the ordinary purposes for which a Vehicle is used, and was not in merchantable condition when sold to Plaintiffs.

78.    Defendants breached the warranty of merchantability implied by law in the transaction made the subject of this dispute.

79.     As a proximate result, Plaintiffs were caused to suffer loss of monies, incidental and consequential damages, as well as bodily injury, severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs pray that this Court will award damages in an amount the Court deems appropriate to compensate Plaintiffs for their loss of monies, incidental and consequential damages, bodily injury, severe mental anguish and emotional distress, in an amount to be determined by a jury, as well as attorneys' fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

## COUNT EIGHT:

## BREACH OF IMPLIED WARRANTY

## OF FITNESS FOR A PARTICULAR PURPOSE

80.     Plaintiffs hereby incorporate and adopt each of the above and foregoing allegations as if fully set forth herein.

81.     A warranty that the Vehicle was fit for the particular purposes of a new, un-wrecked, and undamaged vehicle was implied in the transaction made the subject of this dispute, pursuant to § 2-315 of the Uniform Commercial Code.  Defendant had reason to know of the particular purposes for which Plaintiffs intended to use the goods and Plaintiffs were relying on Defendant's skill and expertise in selecting this Vehicle.

82.    Defendant provided a written warranty on the Vehicle and were either warrantors or suppliers under the Magnuson-Moss Warranty Act. As such, Defendants may not disclaim implied warranties as to the Vehicle.

83.    Defendants sold Plaintiffs a Vehicle that does not fit Plaintiffs' particular purpose of a new, un-wrecked and undamaged vehicle.

84.    Defendant and/or Defendant's agents breached the implied Warranty of Fitness for a Particular Purpose, implied by law in the transaction made the subject of this dispute.

85.    As a proximate result, Plaintiffs were caused to suffer loss of monies, incidental and consequential damages, as well as bodily injury, severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs prays that this Court will award damages in an amount the Court deems appropriate to compensate Plaintiffs for their loss of monies, incidental and consequential damages, bodily injury, severe mental anguish and emotional distress, in an amount to be determined by a jury, as well as attorneys' fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

Thomas C. Donald
ASB-6795-A47D, DON041
Law Office of Thomas C. Donald, LLC
1707 29th Court South
Birmingham, AL 35209

Phone: 205 985 2309
Fax: 205 802 7083
Email: cdonald@donaldlawfirm.com


***/s/Michael E. Parrish***
Michael E. Parrish
ASB-5747-S69M, PAR075
PARRISH & THEUS, L.L.C.
P.O. Box 590067
Birmingham, AL 35259
Phone: (205)326-0026
Email: mike.parrish@parrish-theus.com


**PLAINTIFFS DEMANDS TRIAL BY STRUCK JURY**